IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**LOUISE KING**                                                                                          **PLAINTIFF**

v.                                    Case No. 5:14-cv-00021-KGB

**DAVIS LIFE CARE CENTER**                                                          **DEFENDANT**

## OPINION AND ORDER

Plaintiff Louise King brings this action against defendant Davis Life Care Center ("Davis"), her former employer. Before the Court is Davis's motion for summary judgment (Dkt. No. 14). Ms. King has responded (Dkt. No. 23), and Davis has replied (Dkt. No. 28). For the reasons that follow, the Court grants Davis's motion for summary judgment.

**I.      Factual Background**

The following facts are taken from Davis's statement of facts in support of motion for summary judgment (Dkt. No. 16), unless otherwise indicated. Ms. King, who is African American, began working for Davis in 1998 as a clinical supervisor and became the director of nurses in 2000 (Dkt. No. 26, at 1). As director of nurses, Ms. King supervised the registered nurses, licensed practical nurses, and certified nursing assistants working in the Davis Life Care Center, which is one of five facilities owned by Davis (Dkt. No 26, at 1). By 2012, Ms. King was paid an annual salary of over $95,000 (Dkt. No. 16-1, 12). She normally worked five days a week (Dkt. No 26, at 2).

From May 2012 through August 2012, Ms. King took leave under the Family Medical Leave Act ("FMLA") to attend to her husband and daughter, who were dealing with health issues (Dkt. No. 26, at 2). This was the only time in her 15 years at Davis that she took FMLA leave (Dkt. No. 16-1, at 5). During this period, she continued working for Davis as a "nurse

consultant" (Dkt. No. 27, at 1-2) on a reduced schedule:  two days one week then three days the next week (Dkt. No 26, at 2).

While Ms. King was on FMLA leave, a woman named Grace Varnell, who is Caucasian, assumed the responsibilities of director of nursing (Dkt. No. 16-1, 6).  However, as a "nurse consultant," Ms. King "pretty much did the same thing [she] did as the [director of nursing]" (Dkt. No. 16-1, at 6).  While she was working on a reduced schedule, she continued to receive her complete annual salary of over $95,000 (Dkt. No. 26, at 3).  She was not paid by the hour, and she used her paid time off and sick leave to supplement the days she actually worked (Dkt. No. 28, at 2).

In August 2012, Joe Ratliff, Davis's chief executive officer, asked Ms. King to resume working full time as the director of nurses until Davis hired a permanent replacement for her (Dkt. No 26, at 3-4).  Ms. King claims that Mr. Ratliff, who is now deceased, told her that once a replacement was hired, she could again work for Davis as a nurse consultant at the same rate of pay (Dkt. No 26, at 4).  Ms. King's husband and daughter no longer required the level of care that prompted her to take FMLA leave, so she resumed working full time as the director of nurses (Dkt. No 26, at 4).

In January 2013, Ms. King requested a raise (Dkt. No. 26, at 6).  She did not request a specific amount.  Davis denied her request, claiming that it did not have the resources at that time to provide a pay increase (Dkt. No. 26, at 6).  Ms. King claims that three Caucasian office workers, who are paid by the hour, received raises between 2010 and 2013, though she admits that she does not know what their hourly rates of pay were or the amount of each of their raises (Dkt. No. 26, at 6).

Ms. King served as the director of nurses until March 2013, when she decided to retire due to stress caused by the death of two patients (Dkt. No 26, at 8). The decision to retire was hers, and she was not encouraged to do so by anyone at Davis (Dkt. No. 26, at 8). She was not discharged (Dkt. No. 26, at 7). Ms. King did not take additional leave, but rather, she ended her service as director of nurses on May 3, 2013[1] (Dkt. No 16, at 3). Immediately following Ms. King's resignation as director of nursing, she was replaced by Gloria Sanders, an African-American woman (Dkt. No. 26, at 8).

While Ms. King wanted to retire from serving as director of nurses, she did not want to sever her employment relationship with Davis. Davis offered Ms. King the opportunity to continue working as a nursing consultant, at a rate of $30 an hour with the potential to work 10 hours a month (Dkt. No. 16-1, at 10). Ms. King declined this offer, claiming that Mr. Ratliff told her that "she would be paid per hour at the previous rate of pay," which she claims equaled $45 an hour (Dkt. No. 26, at 5-6). Furthermore, she claims that "another Consultant, a Caucasian female, was paid $45 per hour notwithstanding her lack of experience and education in the field of nursing" (Dkt. No. 26, at 9).

On April 18, 2013, Kathy Cash, Davis's Human Resources and Corporate Compliance Officer, sent Ms. King a letter acknowledging Davis's offer and Ms. King's verbal response, indicating that the offer was unsuitable to her (Dkt. No. 16-1, at 24). In the letter, Ms. Cash informed Ms. King that, based on her decision to retire as director of nursing and her unwillingness to continue working as a nurse consultant at $30 an hour, Davis would "terminate [her] employment" as of her retirement date, while making her subject to rehire (Dkt. No. 16-1, at 24). After receiving this letter, Mr. King filed a charge of racial discrimination with the Equal

---

[1] Ms. King's last day at work at Davis was April 5, 2013. However, she continued receiving her full salary through May 3, 2013 (Dkt. No. 16-1, at 15-16).

Employment Opportunity Commission ("EEOC"), making two claims: (1) that she was denied a requested pay increase in January 2013 while three Caucasian coworkers were granted raises from 2010 to 2013, and (2) that she was offered a lower consultant pay rate in April 2013 because of her race (Dkt. No. 16-1, at 25). Her EEOC charge only indicates a claim of racial discrimination. The boxes for sex, age, and disability discrimination are unmarked (Dkt. No. 16-1, at 25). After an investigation, the EEOC closed Ms. King's file and issued a right to sue letter (Dkt. No. 2, at 11).

## II.     Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). Summary judgment is not precluded by disputes over facts that could not, under the governing law, affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson*, 477

U.S. at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### III. Davis's Motion for Summary Judgment

Ms. King alleges in her amended complaint that she brings this action against Davis "to redress the deprivation of her rights from discriminatory and employment practices on the basis of race including her wrongful termination on the basis of race and retaliation, in violation of the Family Medical Leave Act of 1993 and the Americans with Disabilities Act of 1990. . . ." (Dkt. No. 2, at 1−2, ¶ 1). In support of her claims, she alleges, among other things, that Davis violated the FMLA, 29 U.S.C. § 2601 *et seq.*; 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Equal Pay Act, 29 U.S.C. § 206 *et seq*. Davis argues that it is entitled to summary judgment on each of Ms. King's claims and asks that the Court dismiss with prejudice this case.

#### A. Claims Under The Americans With Disabilities Act

Davis argues that Ms. King's claims under the ADA are barred because she failed to exhaust her administrative remedies prior to filing this action (Dkt. No. 15, at 1). As Davis notes, the ADA bars suit by an employee unless the employee previously filed charges with the appropriate administrative agency and received a right to sue letter. *McSherry v. Trans World Air Lines, Inc.*, 81 F.3d 739, 740 n.3 (8th Cir. 1996). If the employee properly files a charge and the administrative agency issues a right to sue letter, "the charge limits the scope of the subsequent civil action because 'the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'" *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006).

After her employment at Davis ended, Ms. King filed a charge with the EEOC. However, she only claimed racial discrimination in the charge, leaving all other discrimination claims unmarked (Dkt. No. 2, at 12). Therefore, Davis argues that Ms. King "failed to exhaust her administrative remedies on a claim of disability discrimination and the claim is therefore barred" (Dkt. No. 15, at 2).

Ms. King does not dispute that she was required to file charges with the EEOC prior to bringing this action. However, she argues that her claim under the ADA should not be dismissed because it "is within the scope of her 2013 EEOC charge" and "is like or reasonably related to the substance of her discrimination claim" (Dkt. No. 27, at 5). Ms. King states that the Eighth Circuit does not require "that subsequently-filed lawsuits mirror the administrative charges." *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004) *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). She argues that "the scope of the subsequent action is not necessarily limited to the specific allegations in the charge" and that a "plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Nichols v. Am. Nat. Ins. Co.*, 154 F.3d 875, 886-87 (8th Cir. 1998). However, Ms. King acknowledges that "the sweep of any subsequent judicial complaint may be [only] as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination." *Duncan*, 371 F.3d at 1025 (internal citations omitted).

As a preliminary matter, Ms. King's claim under the ADA is unclear. In her amended complaint, she fails to inform the Court of any alleged disability from which she claims to suffer, let alone identify how she purportedly was discriminated against by Davis on the basis of such an alleged disability. She fails to state any facts in her complaint that would support such a claim.

Even if Ms. King can state a claim for alleged discrimination under the ADA, it is not within the scope of her EEOC charge. Ms. King made two claims to the EEOC: (1) that she was denied a raise in 2013 while three Caucasian employees were granted pay increases from 2010 to 2013 and (2) that she was offered a lower consultant pay rate in 2013 because of her race (Dkt. No. 2, at 12). Both of these assertions are clearly claims of racial, not disability, discrimination. There is no record evidence that supports Ms. King's claim that she informed the EEOC of alleged disability discrimination or that Davis should have been aware of her contention. While Ms. King is correct that a lawsuit need not mirror a previously filed EEOC charge, "there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo,* a claim which simply was not made." *Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015) (quoting *Parisi v. Boeing Co.,* 400 F.3d 583, 585–86 (8th Cir.2005)). Accordingly, the Court dismisses Ms. King's claims under the ADA due to her failure to exhaust her administrative remedies.

    **B.**  **Claims Under the Family Medical Leave Act**

The Eighth Circuit recognizes three types of claims under the FMLA. An employee has a claim under the FMLA when his or her employer "refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012). The FMLA also creates a retaliation claim, meaning if "an employee opposes any practice made unlawful under the FMLA . . . then the employer may not for that reason take adverse action against the employee who is engaged in the opposition." *Id.* at 1006. Finally, a discrimination claim arises under the FMLA "when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." *Id.*

Davis argues that it is unclear which type of FMLA claim Ms. King is making (Dkt. No. 15, at 3). While her response to Davis's motion for summary judgment does not completely resolve this ambiguity, Ms. King appears to be making a discrimination claim by asserting that "the stark reduction in her pay as a consultant was not some innocuous event, but rather, it was a discriminatory action based on Plaintiff's decision to intermittently use FMLA" (Dkt. No. 27, at 3).

Ms. King presents no direct evidence of discrimination based on her use of leave under the FMLA, meaning her claim must be analyzed under the *McDonnell Douglas* burden-shifting framework. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1016 (8th Cir. 2013). Under *McDonnell Douglas*, Ms. King has the burden of establishing a *prima facie* case of discrimination, meaning she must "show that she exercised rights afforded by the [FMLA], that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action." *Id*. If she does make a *prima facie* case, the burden shifts to Davis to produce "evidence of a legitimate, nondiscriminatory reason for the adverse action." *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008). If Davis is able to do so, the burden shifts back to Ms. King to produce "evidence that creates an issue of fact as to whether the asserted reason was pretext for discrimination." *Id.*

Ms. King exercised her rights under the FMLA once in her 15 years at Davis, from March 2012 to August 2012. She identifies two potential adverse employment actions, which are "tangible change[s] in working conditions that produce[] a material employment disadvantage. This might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015). The first is her decision to retire as director of nurses in 2013. The second is Davis's offer of

$30 an hour for work as a nurse consultant, rather than the $45 an hour that Ms. King claims was previously promised to her by Mr. Ratliff.

### 1. Decision to Retire

By her own admission, Ms. King's decision to retire does not constitute an adverse employment action. She chose to retire voluntarily and was not encouraged to do so by anyone from Davis (Dkt. No. 26, at 8). While she alleges in her complaint that she was discharged from Davis, she admits in her response to defendant's statement of facts in support of motion for summary judgment "that she was never discharged as the complaint alleges" (Dkt. No. 26, at 7-8). Therefore, her decision to retire as director of nursing was not an adverse employment action.

### 2. Reduced Consulting Fee

Ms. King claims that, in 2012, Mr. Ratliff told her that once a permanent replacement for director of nursing was hired, she could resume working as a nursing consultant "for the same amount that she had during the summer of 2012" (Dkt. No. 26, at 8). In the summer of 2012, Ms. King worked intermittently on a reduced schedule, as supplemented by using paid time off and sick days (Dkt. No. 28, at 2). She remained a salaried employee being paid an annual salary of over $95,000 (Dkt. No. 16-1, at 6). She was not paid by the hour.

Ms. King understood Mr. Ratliff's offer to mean that, when she retired as director of nursing in 2013 and began working as a consultant, she would be paid the same rate as her previous annual salary (Dkt. No. 26, at 6). She calculated her "hourly rate" by dividing her annual salary by 2,080 hours (20 hours a week for 52 weeks), which equals $45.67 (Dkt. No. 28, at 1). There is' no indication that Mr. Ratliff made the same calculation in 2012, and Ms. King offers no proof showing that he specifically offered her $45 an hour.

Davis contends that this was simply a misunderstanding, as "what Ms. King was proposing to Davis Life Care [in 2013] was not the same arrangement that she had while she was on FMLA leave in 2012" (Dkt. No. 15, at 6). The offer of $30 an hour was not a reduction in salary, but rather, it was an offer during negotiations as to an hourly rate for a new position with different responsibilities (Dkt. No. 15, at 6). Davis argues that "[t]he failure of the parties to be able to reach an agreement as to an hourly rate for consulting is not an adverse employment action" (Dkt. No 15, at 5).

The Court will not rule that, as a matter of law, the "reduced" consulting fee could not constitute an adverse employment action. The Court recognizes the possibility that this was all a misunderstanding, exacerbated by Mr. Ratliff's unfortunate decline in health during the events in question. However, Mr. Ratliff did assure Ms. King that she could resume working as a nurse consultant once a permanent replacement for director of nursing was found and that she would be paid at the "same rate." The meaning of "same rate" is at least a disputed fact.

Even if the reduced consulting rate constituted an adverse employment action, however, Ms. King fails to state a *prima facie* case of discrimination because she does not show any causal connection between exercising her FMLA rights and the reduced hourly rate she was offered. She offers no evidence to indicate that Davis's offer of the $30 an hour consulting rate was tied in any way to her prior use of FMLA leave. Ms. King's only attempt to establish such a causal connection is by asserting that "the stark reduction in her pay as a consultant was not some innocuous event, but rather, it was a discriminatory action based on Plaintiff's decision to intermittently use FMLA. In light of Plaintiff's exemplary record, any other motive posited by Defendant is nothing more than a pretextual falsehood masqueraded as a non-discriminatory justification" (Dkt. No. 26, at 10). Ms. King's assertion, standing alone, is insufficient to

establish the third element of a *prima facie* case. Her burden under *McDonnell Douglas* is to meet an evidentiary, not a pleading, standard. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1016 (8th Cir. 2013).

Furthermore, the Court notes that "the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a causal connection has been established." *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1003 (8th Cir. 2005). Ms. King went on FMLA leave from May 2012 to August 2012. The potential adverse employment action occurred in April 2013. The Eighth Circuit previously has held that "a two-month interval between protected activity and termination diluted any inference of causation such that the temporal connection could not justify a causal link as a matter of law." *Id.* Two month is substantially less than the interval in this case between Ms. King's use of FMLA leave and the offer of the $30 an hour consulting rate. Accordingly, the Court finds that Davis is entitled to summary judgment on Ms. King's discrimination claim under the FMLA. To the extent Ms. King intended to bring any other claim under the FMLA, the Court finds Ms. King's factual allegations and record proof lacking to ensure such claims survive Davis's motion for summary judgment.

C. **Claims of Racial Discrimination**

Ms. King, who is African American, claims that Davis discriminated against her based on her race. In her charge to the EEOC, she claims that Davis discriminated against her in two regards: (1) by denying her request for a pay increase in 2013 and (2) by offering her a lower consultant pay rate after she retired as director of nursing. Her amended complaint repeats these claims, while also alleging that she was "wrongfully discharged from her position as Registered Nurse/Consultant Nurse" on April 18, 2013, on the basis of her race (Dkt. No 2, at 5). She

brings her racial discrimination claims pursuant to 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, and the Arkansas Civil Rights Act, which are analyzed in the same manner. *Hart v. Farmers Ins. Exch.*, 2015 WL 1578927, at *2 (E.D. Ark. Apr. 9, 2015).

To survive Davis's motion for summary judgment on her racial discrimination claims, Ms. King must either offer direct evidence of discrimination, meaning "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action" or present evidence "creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*." *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692 (8th Cir. 2009) (internal citations omitted). Ms. King does not point the Court to any direct evidence showing discrimination and focuses her response on Davis's motion for summary judgment exclusively on the *McDonnell Douglas* framework (Dkt. No. 27, at 5-8). Accordingly, like her FMLA claim, Ms. King's racial discrimination claims must be analyzed under the *McDonnell Douglas* burden-shifting framework.

Under *McDonnell Douglas*, Ms. King must first establish a *prima facie* case of race discrimination, meaning she must show that: "(1) [she] is a member of a protected class, (2) [she] met [her] employer's legitimate expectations, (3) [she] suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014). If she makes a *prima facie* case, "the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 577-78. If Davis meets that burden, "the presumption of

discrimination disappears, and plaintiff is required to prove the proffered justification is merely a pretext for discrimination." *Id.* at 578.

The parties agree that Ms. King is a member of a protected class. Ms. King argues, and Davis does not dispute, that she met her employer's legitimate expectations (Dkt. No. 26, at 10). However, Davis argues that Ms. King failed to make a *prima facie* case of racial discrimination by either failing to state an adverse employment action or failing to raise an inference of racial discrimination.

### 1. Termination

Davis argues that the wrongful discharge claims in Ms. King's amended complaint are directly contradicted by her testimony in her deposition and that, because of her testimony, her decision to leave Davis's employment cannot constitute an adverse employment action. In addition, Davis argues that Ms. King failed to present any evidence "with respect to any alleged termination from employment that give[s] rise to an inference of racial discrimination" (Dkt. No. 15, at 4-5).

In responding to the summary judgment motion, Ms. King does not dispute that she was not discharged as her complaint alleges and that "she retired on her own and was not encouraged to do so by anybody at Davis" (Dkt. No. 26, at 7-8). Therefore, the Court finds that her departure from Davis does not constitute an adverse employment action. Any claims based on this theory fail to survive Davis's motion for summary judgment.

### 2. Consultant Rate in 2013

Ms. King also claims that she was entitled to make $45 an hour as a consultant when she retired as director of nursing in 2013 and that Davis's offer of a lower rate constitutes racial

discrimination. In support of her argument, she identifies a Caucasian woman, Gail Pate, who she claims is a valid comparator (Dkt. No. 27, at 6-8).

Davis argues the dispute over the consulting rate does not constitute an adverse employment action (Dkt. No. 15, at 5-6). For reasons previously stated, this Court declines to find that, as a matter of law, that this dispute could not constitute an adverse employment action.

Davis also argues that Ms. King failed to make a *prima facie* case because she did not raise an inference of discrimination (Dkt. No. 15, at 6). Davis argues that any comparison Ms. King makes to Ms. Pate does not create such an inference because "she never worked as the director of nurses and never had the same responsibilities as Ms. King" (Dkt. No. 15, at 6). According to Davis, Ms. Pate "was a nurse for a physician who treats patients for all the Davis facilities, which includes not only the one where Ms. King worked but also four others. Ms. Pate was on call at all five facilities, 24 hours a day, seven days a week. She did not have the same responsibilities as Ms. King as the director of nurses" (Dkt. No. 15, at 6).

Ms. King argues that her comparison to Ms. Pate does create a valid inference of discrimination. She claims that Ms. Pate had "the same job" and that "the circumstances between [Ms. King] and [Ms. Pate] were 'nearly identical'" (Dkt. No. 27, at 7). However, she also admits that "Ms. Pate did not have the same responsibilities as Ms. King as the director of nurses" (Dkt. No. 26, at 7-8).

A plaintiff can create an inference of discrimination by showing that "similarly situated employees outside the protected class were treated differently." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). Ms. King fails to demonstrate that Ms. Pate was so similarly situated. Prior to retiring as director of nursing, Ms. King was a salaried employee (Dkt. No. 26, at 3). She remained a salaried employee while taking FMLA leave in 2012, when she held the

title of "nursing consultant" (Dkt. No. 16-1, at 7). When she retired, she expected to continue working for Davis as a nursing consultant. However, unlike the period in 2012, she expected to be paid by the hour, not on a salary (Dkt. No. 26, at 5-6).

Ms. King freely admits that there is a difference between being paid on an hourly basis and being paid a salary (Dkt. No. 16-1, at 16). There is no dispute that Ms. Pate was a salaried employee, not an hourly employee (Dkt. No. 16-1, at 16). There is also no dispute that Ms. King would be paid hourly as a nurse consultant in 2013 (Dkt. No. 26, at 5-6). Therefore, the measure of compensation between Ms. King and Ms. Pate is not "nearly identical." Furthermore, as Davis notes, Ms. King fails to present any evidence other than her own assertions tending to show the level of Ms. Pate's compensation (Dkt. No. 28, at 2).

Ms. King also fails to demonstrate how her responsibilities as a nursing consultant would be similar to Ms. Pate's. Davis claims that Ms. Pate "never had the same responsibilities as Ms. King" (Dkt. No. 15, at 6). Specifically, Davis claims that Ms. Pate "was a nurse for a physician who treats patients for all the Davis facilities, which includes not only the one where Ms. King worked but also four others. Ms. Pate was on call at all five facilities, 24 hours a day, seven days a week" (Dkt. No. 15, at 6). Ms. King doesn't dispute that her responsibilities differed from Ms. Pate's (Dkt. No. 26, at 7-8). Despite this admission and without offering any evidence to the contrary, Ms. King asserts that her situation was "nearly identical" to Ms. Pate's (Dkt. No. 27, at 7). The Court finds that Ms. King fails to present any evidence that would compel the Court to reach this conclusion.

The Court finds that, based on the record evidence with all reasonable inferences drawn in her favor, Ms. King fails to present circumstances giving rise to an inference of racial discrimination. Accordingly, she fails to make a *prima facie* case, and Davis is entitled to

summary judgment on Ms. King's claim that its' offer of $30 an hour as a consulting fee purportedly constituted racial discrimination.

### 3. Denied Request for a Pay Raise

In addition, Ms. King claims that Davis's denial of her request for a pay increase in 2013 constituted racial discrimination. Ms. King presents no direct evidence of racial discrimination related to the denial. Instead, she compares the denial of her request to Davis's decision to grant pay increases for three Caucasian employees from 2010 to 2013. At the time Ms. King's request was denied, Davis claimed that the denial was based on lack of resources (Dkt. No. 26, at 6).

Ms. King presents no evidence of the raises for the Caucasian employees she offers as comparators. She claims that one employee received a raise in 2011 and that the others received raises in 2012 and 2013 (Dkt. No. 26, at 6). She admits that these employees were compensated by the hour and not by salary (Dkt. No. 26, at 6). She also admits that she does not know their hourly rates or the amount those hourly rates were purportedly raised. In summation, Ms. King does not provide the Court with any information other than her belief that three Caucasian employees got raises over three years.

Davis argues that Ms. King fails to establish a *prima facie* case of racial discrimination because she fails to raise any inference of racial discrimination. Even if she could establish a *prima facie* case, Davis argues that she fails to show how Davis's non-discriminatory explanation for denying her request was a pretext (Dkt. No. 15, at 7). Ms. King did not address Davis's arguments in her response.

Ms. King fails to provide the Court with sufficient information to support a *prima facie* case of racial discrimination based on Davis's denial of her request for a raise. The Court has little to no information about the employees that allegedly received raises. The Court has no way

of determining if they were similarly situated to Ms. King. Even if Ms. King made a *prima facie* case, Davis offered a valid non-discriminatory reason for denying her pay increase: that there were insufficient funds to grant her request. Under *McDonnell Douglas*, Ms. King has the burden of producing evidence to demonstrate that this reason was a pretext. In her response to the motion for summary judgment, Ms. King does not respond to this argument at all. For these reasons, there is insufficient record evidence from which a reasonable juror could conclude that Davis's denial of Ms. King's request for a pay increase constitutes racial discrimination, and the Court concludes Davis is entitled to summary judgment in its favor on this claim.

### D. Claims Under the Equal Pay Act

In her amended complaint, Ms. King includes a claim for relief under the Equal Pay Act ("EPA") (Dkt. No. 2, at 1). "In order to establish a prima-facie case under the EPA, an employee must prove an employer paid different wages to men and women performing equal work . . . The burden of proof then shifts to the employer to prove a statutory affirmative defense." *Drum v. Leeson Elec. Corp.*, 565 F.3d 1071, 1072 (8th Cir. 2009) (internal citation omitted).

Davis argues that Ms. King fails to establish a *prima facie* case under the EPA, as she "has not pointed to any male employee who worked as the director of nurses for Davis Life Care that was paid more than Ms. King. She has no records of any pay with respect to anybody who has served as the director of nurses other than herself" (Dkt. No. 15, at 7). In her response to Davis's motion for summary judgment, Ms. King simply stated the legal standard for making a *prima facie* case under the EPA (Dkt. No. 27, at 8-9).

The Court finds that Ms. King fails to establish through record evidence a *prima facie* case under the EPA, even with all reasonable inferences drawn in her favor. Therefore, Davis's motion for summary judgment on claims brought pursuant to the EPA is granted.

### E. Claims Under the Age Discrimination Act

In her response to Davis's motion for summary judgment, Ms. King includes an argument regarding age discrimination (Dkt. No. 27, at 8). In its reply to Ms. King's response, Davis notes that it "was not sued under the Age Discrimination Act nor was there any charge of discrimination filed with the EEOC alleging a violation of the Age Discrimination Act" (Dkt. No. 28, at 3). Davis argues that any claim for age discrimination should be dismissed because it was not plead or due to Ms. King's failure to exhaust her administrative remedies. Ms. King has not sought to amend her complaint to include a claim of age discrimination.

Having reviewed Ms. King's amended complaint, the Court finds nothing that would provide adequate notice to Davis or this Court that Ms. King intended to assert an age discrimination claim. The Court finds that such a claim was not properly alleged and does not warrant consideration. *Smith v. Ouachita Technical Coll.*, 337 F.3d 1079, 1080 (8th Cir. 2003).

Even if an age discrimination claim was alleged, Ms. King failed to exhaust her administrative remedies. Ms. King was required to file a charge of age discrimination with the EEOC prior to seeking judicial relief. *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 801 (8th Cir. 2011). While Ms. King filed a charge with the EEOC, she did not include a claim of age discrimination (Dkt. No. 2, at 12). For the reasons previously stated in regard to Ms. King's claims under the ADA, the Court finds that Ms. King has failed to exhaust her administrative remedies in regard to any age discrimination claim against Davis.

### F. Claims For Retaliation

Ms. King uses the word "retaliation" in her amended complaint. The Court has reviewed Ms. King's amended complaint and the parties' summary judgment filings in the light of this claim. To the extent Ms. King intended to bring a retaliation claim on the facts she alleges and

with the evidentiary record presented, the Court finds Ms. King's factual allegations and record proof on this claim lacking and insufficient to survive Davis's motion for summary judgment.

### G.     Pendent State Claims

In her amended complaint, Ms. King includes a claim based on at least one state law claim, the tort of outrage.  To the extent that this Order does not dispose of Ms. King's claims under Arkansas state law, including but not limited to claims for the tort of outrage and claims under the Arkansas Civil Rights Act other than those based on alleged race discrimination, the Court declines to exercise supplemental jurisdiction over such claims and dismisses them without prejudice.  *See* 28 U.S.C. § 1367.

### H.     Conclusion

For the foregoing reasons, Davis's motion for summary judgment on Ms. King's federal employment discrimination claims and Arkansas Civil Rights Act claim for race discrimination is granted (Dkt. No. 14).  Ms. King's case is dismissed consistent with this Order.

SO ORDERED this 13th day of November 2015.

*[signature: Kristine G. Baker]*

Kristine G. Baker
United States District Judge